*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

AMERICAN COUNCIL OF LIFE INSURERS;
AMERICA'S HEALTH INSURANCE PLANS; LIFE
INSURANCE ASSOCIATION OF MICHIGAN,
                    *Plaintiffs-Appellants,*

        *v.*

KEN ROSS, Acting Commissioner of the
Office of Financial and Insurance Services,
Michigan Department of Labor and
Economic Growth,
                    *Defendant-Appellee.*

No. 08-1406

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 07-00631—Richard A. Enslen, District Judge.

Argued: January 13, 2009

Decided and Filed: March 18, 2009

Before: MERRITT, COLE, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Edward A. Scallet, GROOM LAW GROUP, Washington, D.C., for Appellants. William A. Chenoweth, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Edward A. Scallet, GROOM LAW GROUP, Washington, D.C., for Appellants. William A. Chenoweth, MICHIGAN DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, Michael P. Farrell, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. Meir Feder, JONES DAY, New York, New York, Mary Ellen Signorille, AARP FOUNDATION LITIGATION, Washington, D.C., for Amici Curiae.

_____

**OPINION**

_____

COLE, Circuit Judge.    Defendant-Appellee Ken Ross is the Commissioner ("Commissioner") of the Michigan Office of Financial and Insurance Services ("OFIS"). Under OFIS's authority to regulate insurance, it promulgated rules, Mich. Admin. Code Rules 500.2201-500.2202 and 550.111-550.112, prohibiting insurers from issuing, delivering, or advertising insurance contracts or policies that contain "discretionary clauses" (the "rules").  Such clauses provide that courts will give deference to a plan administrator's decision to award or deny benefits or interpretation of plan terms in any court proceeding challenging such decisions or interpretations.  Plaintiffs-Appellants American Council of Life Insurers, America's Health Insurance Plans, and Life Insurance Association of Michigan (collectively, "Insurance Industry") filed suit, seeking declaratory and injunctive relief to prevent OFIS from enforcing the rules.  Both parties moved for summary judgment, with the Insurance Industry arguing that the rules are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq.  The district court concluded that because the rules constitute laws regulating insurance under ERISA's savings clause, ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A), they are not preempted by ERISA, and granted summary judgment in favor of the Commissioner.  The Insurance Industry appealed.  For the following reasons, we conclude that Michigan's rules fall within the ambit of ERISA's savings clause insofar as they are state laws regulating insurance, and thus are not preempted by ERISA.

**I.  BACKGROUND**

**A.  Background of the Rules**

The parties stipulated to the following pertinent facts for the purpose of the cross-motions for summary judgment.  (Stip. Facts, Joint Appendix ("JA") 44.)

OFIS is responsible for licensing, examining, and supervising insurers and nonprofit health-care corporations doing business in the State of Michigan.  To this end, OFIS's authority includes the power to disapprove insurance policy forms, and documents associated

with such forms, which are filed by insurers and nonprofit health-care corporations doing business in Michigan.  Pursuant to this authority, OFIS promulgated administrative rules, Mich. Admin. Code Rules 500.2201-500.2202 and 550.111-550.112, which generally prohibit insurers and nonprofit health-care corporations from issuing, advertising, or delivering to any person in Michigan, a policy, contract, rider, indorsement, certificate, or similar contract document that contains a discretionary clause and provide that any such clause is void and of no effect.  The rules define discretionary clauses as:

> [A] provision in a form that purports to bind the claimant to or grant deference in subsequent proceedings to the insurer's decision, denial, or interpretation on terms, coverage, or eligibility for benefits including, but not limited to, a form provision that does any of the following:
> (i) Provides that a policyholder or other claimant may not appeal a denial of a claim.
> (ii) Provides that the insurer's decision to deny policy coverage is binding upon a policyholder or other claimant.
> (iii) Provides that on appeal the insurer's decision-making power as to policy coverage is binding.
> (iv) Provides that the insurer's interpretation of the terms of a form is binding upon a policyholder or other claimant.
> (v) Provides that on appeal the insurer's interpretation of the terms of a form is binding.
> (vi) Provides that or gives rise to a standard of review on appeal that gives deference to the original claim decision.
> (vii) Provides that or gives rise to a standard of review on appeal other than a de novo review.

Mich. Admin. Code Rules 500.2201 (b) and 550.111(c).

The rules took effect June 1, 2007.  Given that employee-benefit plans established or maintained under ERISA commonly contain discretionary clauses, the rules would prohibit any entity covered by them from "issuing, advertising, or delivering to any person in the State of Michigan, including an employee benefit plan subject to ERISA, an underwritten policy or certificate that includes a discretionary clause."  (JA 46.)

Plaintiffs American Council of Life Insurers and America's Health Insurance Plans are national trade associations representing health plans, health insurers, and life insurers that conduct business in Michigan.  Both trade associations "advocate public policies on behalf of their members in legislative, regulatory, and judicial forums at the state and federal levels."  (JA 47.)  Their members offer a variety of insurance products, including "health

care coverage, medical expense insurance, long-term care insurance, disability income insurance, [and] dental insurance." (*Id*.) Plaintiff Life Insurance Association of Michigan represents life insurance companies licensed in Michigan that provide similar insurance products to Michigan customers that sponsor employee benefit plans subject to ERISA.

Because the Insurance Industry is subject to certain rules promulgated by OFIS, the Insurance Industry "would be affected if the [r]ules are upheld because some of their members have in the past used policy forms approved by OFIS that had discretionary clauses and the members may wish to use such clauses in future policy forms submitted to OFIS." (JA 48.) Similarly, many of the customers of the Insurance Industry's members " would be affected if the [r]ules are upheld because they have also purchased OFIS approved policies containing discretionary clauses to fund their employee benefit plans, and many may wish to do so again in the future." (*Id*.)

**B. Procedural Background**

On July 2, 2007, the Insurance Industry filed suit against OFIS, seeking declaratory relief that the rules do not govern the administration and enforcement of the terms of employee benefit plans subject to ERISA, and injunctive relief prohibiting the Commissioner and OFIS from enforcing the rules with respect to insurance policies issued for the purpose of funding or otherwise providing benefits in connection with plans subject to ERISA. Following discovery, both parties moved for summary judgment, with the Insurance Industry arguing, inter alia, that (1) the rules are preempted by ERISA because they interfere with that statute's objectives, and (2) the rules do not fall within the ambit of ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A). The district court rejected each of these arguments, granting summary judgment in favor of the Commissioner.

## II. DISCUSSION

**A. Standard of Review**

We review the district court's grant of summary judgment on the issue of ERISA preemption de novo. *Millsaps v. Thompson*, 259 F.3d 535, 537 (6th Cir. 2001); *see also Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006) ("[T]his court reviews de novo the question of whether a state-law claim is preempted by ERISA."). In order to review the

district court's grant of summary judgment in this case, we look to ERISA, the statutory scheme before us. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982).

**B. ERISA**

ERISA regulates, among other things, employee welfare benefit plans that provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability, or death through the purchase of insurance. ERISA § 3(1), 29 U.S.C. § 1002(1). ERISA permits a participant or beneficiary to bring a civil action (1) "to recover benefits due to him under the terms of his plan," (2) "to enforce his rights under the terms of the plan," or (3) "to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). "This provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). He can also sue to "enforce his rights under the plan, or to clarify any of his rights to future benefits." *Id.*

Because "Congress enacted ERISA to protect . . . the interests of participants in employee benefit plans and their beneficiaries," it set out "substantive regulatory requirements for employee benefit plans and [provided] for appropriate remedies, sanctions, and ready access to the Federal Courts." *Id.* at 208 (quoting 29 U.S.C. § 1001(b)) (internal quotations omitted). In order to effectuate these objectives, "ERISA includes expansive [preemption] provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id.* (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)) (internal citation and quotations omitted). Preemption occurs where a state law interferes with or is contrary to federal law; in such a case, the federal law nullifies the state law. *Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991) (quoting *Gibbons v. Ogden*, 22 U.S. 1, 9 (1824)). Preemption may be express or implied. *Fid. Fed. Sav. & Loan Ass'n*, 458 U.S. at 152-53. In determining whether federal law preempts a state statute, courts look to congressional intent. *Id.* at 152. Under its express preemption clause, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a). The express preemption clause, however, is not absolute, but contains a savings clause. *See* 29 U.S.C.

§ 1144(b)(2)(A). "In apparent tension, however, and reflecting its concern with limiting states' rights to regulate insurance, banking, or securities, Congress drafted a saving[s] clause." *Barber v. UNUM Life Ins. Co. of Am.*, 383 F.3d 134, 137 (3d Cir. 2004). The ERISA savings clause provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities." ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). Therefore, state laws that are otherwise preempted by ERISA may be saved from federal preemption if they regulate insurance, banking, or securities.

## C. Express ERISA Preemption and the Savings Clause

The parties agree that the rules relate to an employee-benefit plan and, therefore, fall under ERISA's express preemption clause. *See* ERISA § 514(a), 29 U.S.C. § 1144(a). There is also no dispute that the rules do not regulate banking or securities. The rules therefore are saved from federal preemption only if they regulate insurance. *See* ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A). In *Kentucky Association of Health Plans v. Miller*, 538 U.S. 329 (2003) (hereinafter "*Miller*"), the Supreme Court clarified the appropriate test to determine whether a state law regulates insurance under the ERISA savings clause. There, the Court held that, first, "the state law must be specifically directed toward entities engaged in insurance," and, second, "the state law must substantially affect the risk-pooling arrangement between the insurer and the insured[s]." *Id*. at 341.

### *1. The Rules are Directed Toward Entities Engaged in Insurance.*

In *Miller*, the Court emphasized that laws of general application that may have some bearing on insurers do not satisfy the first prong. 538 U.S. at 334. Rather, state laws are "directed toward entities engaged in insurance" if insurers are regulated with respect to their insurance practices. *Id*. Here, there can be no serious dispute that the rules meet the first prong of the *Miller* test because they regulate *insurers* with respect to their *insurance practices*. As an initial matter, the rules regulate only those entities within the insurance business. *See* Mich. Admin. Code Rules 500.2201-550.2202 (regulating insurers) and 550.111-550.112 (regulating nonprofit health care corporations providing certificates issued under Act 350); Mich. Admin. Code R. 500.2201(e) (stating that terms used in the rules have the same meaning as in Michigan's Insurance Code); *see also Sgro v. Danone Waters of N.*

*Am., Inc.*, 532 F.3d 940, 943 (9th Cir. 2008) ("The California regulation certainly meets the first part of this test because it is specifically directed toward the insurance industry; by its very terms the regulation pertains only to insurers."). And the rules only proscribe the actions of those entities within the insurance business when they are issuing, advertising, or delivering insurance contracts. *See* Mich. Admin. Code R. 550.2202(b) (an "insurer shall not issue, advertise, or deliver. . . a policy, contract, . . . or similar contract document") and (e) ("[E]ach insurer transacting insurance in this state shall submit . . . a list of all forms . . . that contain discretionary clauses").

Furthermore, under the plain language of the rules, any insurer who wishes to provide insurance in Michigan must submit its insurance forms to the Commissioner for review and may not include a discretionary clause in such forms; if an insurer fails to comply with this requirement, the insurance contract is void and of no effect. *See* Mich. Admin. Code R. 500.2202. Thus, the rules specifically control the terms of insurance policies by specifying the permissible contract terms. *See FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990) (holding ERISA does not preempt a state antisubrogation law because the law "directly controls the terms of insurance contracts by invalidating any subrogation provisions that they contain"). Given that the rules impose conditions only on an insurer's right to engage in the business of insurance in Michigan, we conclude that the rules are directed towards entities engaged in the business of insurance. *See Miller*, 538 U.S. at 337 ("[The laws] regulate[] insurance by imposing conditions on the right to engage in the business of insurance.").

Regardless, the Insurance Industry contends that the rules are not so directed at insurers inasmuch as the effect of the rules is felt primarily by the fiduciary who administers the plan, rather than by the insurer. We disagree. In reaching our decision, we are guided by the Supreme Court's rejection of a similar argument in *Miller*. There, the insurance industry challenged Kentucky's any-willing-provider laws, which prohibit discrimination against any provider willing to meet the terms for participation and also require a plan that provides chiropractic benefits to permit any chiropractor willing to abide by the terms of the plan to serve as a participating primary chiropractor provider. *Miller*, 538 U.S. at 331. The challengers to the chiropractor-provider laws argued that the laws "regulate not only the insurance industry but also doctors who seek to form and maintain limited provider networks

with HMOs." *Id.* at 334.  The challengers argued that because the laws regulate doctors, the laws were not specifically directed toward insurers. *Id.*  The Court rejected this contention, holding that regulations directed toward certain entities that also happen to disable other entities from engaging in the regulated behavior will not remove such regulations from the scope of ERISA's savings clause. *Id.* at 335-36; *see also Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 372 (2002) (holding that the possibility that a state law could affect non-insurers is not enough "to remove a state law entirely from the category of insurance regulation saved from preemption").  Bound as we are by *Miller*, we conclude that, although others may feel the effect of the rules, they are, in fact, directed toward entities engaged in the business of insurance.

### 2.  *The Rules Substantially Affect the Risk-Pooling Arrangement.*

The Insurance Industry's next challenge to the rules focuses on whether the rules substantially affect the risk-pooling arrangement between insureds and insurers as required by *Miller*.  *Miller*, 538 U.S. at 338-39.  In particular, the Insurance Industry maintains that state laws, like Michigan's rules, which have an impact only after risk has been transferred, do not substantially affect the risk-pooling arrangement between insurers and insureds.  This argument also fails.  As an initial matter, the *Miller* test for whether laws "substantially affect the risk-pooling arrangement between insurers and insureds" does not contain any timing element. *See id.*  Nor has the Supreme Court inquired into the timing of the "substantial [e]ffect" on the " risk-pooling arrangement" in its analysis. *See id.* (citing *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999) (hereinafter "*Ward*") (upholding a state common-law notice-prejudice rule prohibiting insurers from denying disputed claims for untimeliness unless the insurer could show prejudice from the delay)).  Rather, the *Miller* Court explained that the "any-willing-provider" statute under review, the "mandated-benefit" law in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724 (1985), the "notice-prejudice" rule in *Ward*, 526 U.S. at 358, and the "independent-review" provision in *Rush Prudential*, 536 U.S. 355, "alter the scope of permissible bargains between insurers and insureds" and, therefore, "substantially affect the risk-pooling arrangement between insurer and insured." *Miller*, 538 U.S. at 338-39.  We find no reason to depart from the Supreme Court's reasoning.  Accordingly, we conclude that Michigan's rules substantially affect the risk-pooling arrangement between insurers and insureds because they "alter the

scope of permissible bargains between insurers and insureds." *Id.* We have several reasons for this conclusion.

First, the rules directly control the terms of insurance contracts by prohibiting insurers and insureds from entering into contracts that include discretionary clauses and prohibiting enforcement of such clauses. By changing the terms of enforceable insurance contracts, the Commissioner has "alter[ed] the scope of permissible bargains between insurers and insureds." *See Ward*, 526 U.S. at 374-75 (explaining that the state notice-prejudice rule changed the bargain between insured and insurer because it effectively created a mandatory contract term that required the insurer to prove prejudice before enforcing a timeliness-of-claim provision); *see also Benefit Recovery Inc. v. Donelon*, 521 F.3d 326, 331 (5th Cir. 2008) (holding that the state insurance commissioner's directive prohibiting insurers from enforcing subrogation rights until insureds are fully compensated for their injuries alters the permissible bargains between insureds and insurers by telling them what bargains are acceptable).

Second, under the rules, insurers can no longer invest the plan administrator with unfettered discretionary authority to determine benefit eligibility or to construe ambiguous terms of a plan. Prohibiting plan administrators from exercising discretionary authority in this manner "dictates to the insurance company the conditions under which it must pay for the risk it has assumed." *Miller*, 538 U.S. at 339 n.3.

We therefore conclude that the rules regulate insurance because they substantially affect the risk-pooling arrangement between insureds and insurers. As such, the rules fall within the scope of ERISA's savings clause.

**D. Conflict Preemption**

The Insurance Industry argues that the rules cannot be saved from preemption because they conflict with ERISA's civil enforcement provisions. Even if a state law regulates insurance such that it falls within ERISA's savings clause, it may nevertheless be preempted by that statute's § 502(a) civil enforcement provisions. In relevant part, § 502(a) allows an ERISA plan participant or beneficiary to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to

clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Accordingly, ERISA's civil enforcement provisions are the "sort of overpowering federal policy that overrides a statutory provision designed to save state law from being preempted." *Rush Prudential*, 536 U.S. at 375. In *Aetna Health*, 542 U.S. at 217-18, the Supreme Court explained that ERISA's savings clause does not obviate the need for conflict preemption analysis, stating:

> ERISA § 514(b)(2)(A) must be interpreted in light of the congressional intent to create an exclusive federal remedy in ERISA § 502(a). Under ordinary principles of conflict pre-emption, then, even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme.

However, there is no state-law claim at issue in this case that implicates ERISA's civil enforcement provisions. The rules do not authorize any form of relief in state courts, either expressly or impliedly; they do not grant a plan participant the ability to "recover benefits under the plan, enforce his rights under the plan, or otherwise clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Put simply, the rules do not create, duplicate, supplant, or supplement any of the causes of action that may be alleged under ERISA. Nor is there any evidence that the rules serve as an alternative enforcement mechanism, outside of ERISA's civil enforcement provisions such that the rules permit a plan beneficiary to assert a claim that could otherwise be asserted under ERISA. *Briscoe*, 444 F.3d at 498. The rules at most may affect the standard of judicial review if, and when, such a claim is brought before a court. Accordingly, Michigan's rules do not conflict with ERISA's civil enforcement provisions; thus, they are not removed from ERISA's savings clause on this basis.

**E. Conflict With the Purpose of ERISA**

Finally, citing the rules' proscription of a deferential standard of judicial review, the Insurance Industry argues that the rules are preempted because they squarely conflict with ERISA's policy of ensuring a set of uniform rules for adjudicating cases under ERISA. The rules, according to the Insurance Industry, have no purpose or effect other than to control ERISA litigation. Here, too, we find their argument unavailing.

First, the plain language of ERISA provides nothing about the standard of review in cases brought under the statute's civil enforcement provisions. *See Rush Prudential*, 536 U.S. at 385 ("ERISA itself provides nothing about the standard" of review). It is worth noting that the de novo standard of review is already the default standard in ERISA cases, so it is difficult to imagine how a state law requiring that level of review would conflict with the statute. *See Firestone Tire & Rubber Co.*, 489 U.S. at 115 (holding that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan"); *see also Rush Prudential*, 536 U.S. at 355 ("[A] general or default rule of de novo review could be replaced by deferential review if the ERISA plan itself provided that the plan's benefit determinations were matters of high or unfettered discretion[.]"); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 291 (6th Cir. 2005) ("This Court reviews de novo an ERISA plan administrator's denial of benefits where the administrator has no discretion to determine benefits eligibility.").

More importantly, we are guided by the Supreme Court's rejection of a similar argument in *Rush Prudential*. There, the Supreme Court held that a state statute mandating that benefit denials are subject to de novo review did not conflict with ERISA. 536 U.S. at 384. In reaching this decision, the Supreme Court first explained that ERISA does not mandate a particular standard of review for reviewing benefit denials. *Id.* at 385. The Court then held that ERISA requires only that: (1) the plan grant a "beneficiary some mechanism for internal review of a benefit denial;" (2) the plan "provide a right to a subsequent judicial forum for a claim to recover benefits;" and (3) that the standard of judicial review not conflict with anything in the text of ERISA, which the Court read to require "a uniform judicial regime of categories for relief and standard of primary conduct, not a uniformly lenient regime of reviewing benefit determinations." *Id.* "Nor is there any conflict in the removal of fiduciary 'discretion'; . . . ERISA does not require that such decisions be discretionary, and insurance regulation is not preempted merely because it conflicts with substantive plan terms." *Id.* at n.16 (citing *Ward*, 526 U.S. at 376).

In *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008), the Supreme Court reaffirmed these principles, noting that a plan administrator's decision denying plan benefits challenged under ERISA, 29 U.S.C. §1132(a)(1)(B), is reviewed de novo unless the

plan provides to the contrary. *See id*. at 2347 (applying trust principles to review of plan administrator's decision following *Firestone*). According to *Glenn*, where the plan provides otherwise by giving the administrator discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate. *Id*. Given *Glenn*'s positive citations of principles announced in *Firestone* and *Rush Prudential*, and its decision in *Rush Prudential*, we conclude that the rules do not conflict with ERISA's civil enforcement provisions or its policy favoring a uniform set of rules.

Finally, we observe that *Glenn* provides further support for holding that Michigan's law is not preempted by ERISA. There, the Court reiterated that a conflict of interest exists when the same insurer is responsible for examining and paying a benefits claim. *Glenn*, 128 S. Ct. at 2348. In view of that conflict, *Glenn* determined that courts, in reviewing a benefits decision by an insurer who has discretion over assessing and paying benefits, may consider that conflict as a factor in deciding whether the plan administrator's decision amounts to an abuse of discretion. *Id*. at 2351. If, as *Glenn* reaffirms, there is a conflict of interest when the same plan administrator decides the merits of a benefits plan and pays that claim, and if, as *Glenn* also holds, it is consistent with ERISA to account for that conflict of interest in reviewing a plan administrator's decision, it is difficult to understand why a State should not be allowed to eliminate the potential for such a conflict of interest by prohibiting discretionary clauses in the first place.

Nor is it necessarily the case, as the Insurance Industry suggests, that, if Michigan can remove discretionary clauses, it will be allowed to dictate the standard of review for all ERISA benefits claims. All that today's case does is allow a State to remove a potential conflict of interest. And while Michigan's law may well establish that the courts will give de novo review to lawsuits dealing with the meaning of an ERISA plan, it does not follow that they will do so in reviewing the application of a settled term in the plan to a given benefit request.

### III. CONCLUSION

For the foregoing reasons, we hold that the Michigan rules fall within the ambit of ERISA's savings clause and are not preempted by that statute. The summary judgment of the district court is **AFFIRMED**.