**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TALANA ORZECHOWSKI, *Plaintiff-Appellant*, <br><br> v. <br><br> THE BOEING COMPANY NON-UNION LONG-TERM DISABILITY PLAN, Plan Number 625, an ERISA Plan; BOEING COMPANY; AETNA LIFE INSURANCE COMPANY, *Defendants-Appellees.* | No. 14-55919 <br><br> D.C. No. 8:12-cv-01905-CJC-RNB <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted August 30, 2016
Pasadena, California

Filed May 11, 2017

Before: Alex Kozinski and Jay S. Bybee, Circuit Judges,
and Donald E. Walter,[*] District Judge.

Opinion by Judge Bybee

---

[*] The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

## SUMMARY[**]

**Employee Retirement Income Security Act**

The panel reversed the district court's judgment, after a bench trial, in favor of the defendants in an ERISA action challenging a decision to terminate the plaintiff's long-term disability benefits.

The district court reviewed the benefits decision for an abuse of discretion because the ERISA plan gave defendants discretionary authority. The panel held that de novo review was required under California Insurance Code § 10110.6, which voided the discretionary clause contained in the plan.

The panel held that § 10110.6 is not preempted by ERISA because it falls within the savings clause set forth in 29 U.S.C. § 1144(b)(2)(A). Agreeing with the Seventh Circuit, the panel concluded that § 10110.6 is directed toward entities engaged in insurance, and it substantially affects the risk-pooling arrangement between the insurer and the insured.

The panel held that § 10110.6 applied to the plaintiff's claim because the relevant insurance policy renewed after the statute's effective date. The panel remanded the case to the district court.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Russell George Petti (argued), Los Offices of Russell G. Petti, La Canada, California; Glenn R. Kantor and Peter S. Sessions, Kantor & Kantor LLP, Northridge, California; for Plaintiff-Appellant.

Ronald Keith Alberts, Matthew G. Kleiner, Jessica Wolff, Michelle L. Steinhardt, and Adelle Greenfield, Gordon & Rees LLP, Los Angeles, California, for Defendants-Appellees.

**OPINION**

BYBEE, Circuit Judge:

Talana Orzechowski challenges Aetna Life Insurance Company's (Aetna) decision to terminate her long-term disability benefits under a plan created by her employer, The Boeing Company (Boeing). Under the Employee Retirement Income Security Act of 1974 (ERISA), we may review a denial of benefits. Where a plan grants discretion to an administrator to determine benefits, we ordinarily review for abuse of discretion. By statute, however, California has voided such provisions conferring discretionary authority to ERISA plan administrators such as Aetna. Cal. Ins. Code § 10110.6(a). The district court held that California's statute did not apply to Boeing's plan and upheld Aetna's denial of benefits to Orzechowski. We disagree and hold that § 10110.6(a) applies here. We reverse the district court's judgment and remand the case to the district court to review Aetna's decision de novo.

## I.  BACKGROUND

### A.  *Boeing's ERISA Plan*

The lawsuit arises from Aetna's termination of Orzechowski's benefits under a health and welfare benefits plan that Boeing offers to its non-union employees (the Plan), which is governed by ERISA.  The principal plan document is The Boeing Company Master Welfare Plan (Master Plan). This document provides general information about the various benefit plans Boeing offers, but does not detail the various benefits payable through the Plan.  The Master Plan has a broad grant of discretionary authority, which has been delegated to a service representative, Aetna.[1]  This grant includes the power to "determine all questions that may arise including all questions relating to the eligibility of Employees and Dependents to participate in the Plan and amount of benefits to which any Participant or Dependent may become entitled."

The Master Plan incorporates by reference various component benefit programs and the applicable Governing Documents describing the entitlement to benefits under those programs.  One such benefit program is The Boeing Company Non-Union Long-Term Disability Plan (PN 625) at issue in this case.  The Summary Plan Description, a Governing Document, is a description of the plan which the Plan Administrator is required to provide under ERISA.

---

[1] Orzechowski disputes whether Boeing actually delegated its discretionary authority to Aetna.  This argument is raised for the first time on appeal, and we will not consider it.  *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

29 U.S.C. § 1022. Boeing's Summary Plan Description explains that insured employees are eligible for long-term benefits when they become disabled. For the first 24 months, "disabled" is defined as the employee's inability to perform "the material duties of [the employee's] *own occupation*" due to an injury or illness. (Emphasis added). After 24 months, disability is redefined so that an employee is disabled if she is "unable to work at *any reasonable occupation* for which [she] may be fitted by training, education, or experience." (Emphasis added). There are exclusions or limitations on the payment of long-term benefits. Relevant here, the long-term benefits plan covers conditions for a maximum of 24 months if the "primary cause" of the disability is "mental illness."

Aetna issued two documents, a policy and a certificate, which fund the disability benefits and are Governing Documents incorporated into the Master Plan.[2] Through the Aetna Life Insurance Company Group Life and Accident and Health Insurance Policy No. 000707 (Policy) issued to Boeing, Aetna agreed to fund and administer long-term disability benefits to employees insured under the Boeing

---

[2] Aetna argues the Policy is not a Governing Document. A Governing document is defined as

> the applicable certificate of insurance booklets issued by an insurance company, summary plan descriptions or other documents distributed by the Company and intended by the Plan Administrator to be Governing Documents, including summaries of material modification, applicable trust agreements or other funding vehicles . . . .

The Policy in question is clearly a "funding vehicle" and meets the definition.

plan. The Policy includes a grant of discretionary authority to Aetna to "review all denied claims," "determine whether and to what extent employees and beneficiaries are entitled to benefits," and "construe any disputed or doubtful terms of the policy." The Policy further specifies that "Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously."

B. *Orzechowski  Becomes Disabled*

Talana Orzechowski worked at Boeing until February 27, 2009. In 2004, she was diagnosed with fibromyalgia and chronic fatigue syndrome. In January and February 2009, Orzechowski began suffering memory problems and increases in fatigue. Orzechowski suffered from a number of serious symptoms of largely unknown cause, including fatigue, loss of motor control, spinal and joint pain, and loss of cognitive functioning. Some of the symptoms appeared to be psychological in nature, including depression, obsessive compulsions, and suicidal thoughts. Other symptoms were more typical of physical illness, such as profuse sweating, muscle and nerve pains, and lung weakness. She also suffered from a wide range of other physical ailments, including fatigue, headaches, tiredness, extended periods of sleeping, asthma, decreasing muscle tone, and nausea.

Orzechowski saw numerous doctors to attempt to diagnose and address these issues. In February 2009, Orzechowski applied for short-term disability benefits under Boeing's employee benefits plan, which Aetna approved for the maximum duration of six months (26 weeks), until July 28, 2009. Aetna then completed a long-term disability

review, and approved long-term disability benefits under the "own occupation" definition of disability effective July 29, 2009.  This benefits period would run through July 28, 2011.

In 2010, Aetna informed Orzechowski that the definition of disability would change from the "own occupation" to "any reasonable occupation" standard after her current benefit period ended.  Aetna requested documentation to support her disability claim under the new standard.

Aetna received substantial medical records prepared by Orzechowski's physicians.  It then sent Orzechowski's file to two physicians to review, a psychiatrist and a neurologist.  Neither examined her.  The psychiatrist agreed with Orzechowski's physicians that she could perform no work, including "even simple, routine and repetitive work duties reliably and safely."  His conclusion was based on her psychiatric impairments, and the report noted that "potential physical impairment [was] outside the scope of [his] expertise."  The neurologist acknowledged her extensive diagnoses, including "chronic fatigue, mood disorder, adrenal disorder and inflammatory polyarthropathy," and her symptoms of "fatigue, depression, memory impairment . . . loss of motor strength [and] deteriorating motor and cognitive skills," but he, however, concluded she had "[n]o functional limitations" on her ability to work and that she "can likely perform own occupation (light)" with "[n]o limitations or restrictions."  Based on these reports, Aetna denied Orzechowski's claim.

In a response to Aetna's reviewers, Orzechowski's own treating physician wrote a letter formally disagreeing:

> It is concerning to me that a simple common
> sense review of the multiple historic findings
> detailed thoroughly in my monthly hour long
> evaluations of the patient would make it quite
> clear that this patient is not able to perform
> any level of work. She has not been able to
> care for herself without assistance and is
> unable to even administer her own medication
> . . . .

And while no specific neurological cause had been discovered for her condition, he noted that "if the patient has no neurological disorder, why has she remained so neurologically and functionally impaired? It is clear in this case that the absence of evidence does not constitute evidence of absence."

Aetna asked its outside reviewing neurologist to examine her file again. After a peer-to-peer conference with her doctors, he again concluded that Orzechowski's symptoms must be psychiatric in origin because there is no definite evidence of a neurologic diagnosis. In July 2011, Aetna terminated payment of Orzechowski's long-term disability benefits based on its determination that her disability is caused by a mental condition, more specifically depressive disorder and mood disorder, which falls under the Plan's 24-month mental health limitation. Aetna determined she was physically capable of "light work."

Orzechowski's attorney appealed Aetna's denial and provided additional documentation showing that "Orzechowski's depression and anxiety symptoms are clearly secondary to her medical conditions." Aetna referred

Orzechowski's evidence to yet a third reviewer.  He found that Ms. Orzechowski had "no functional impairment" that would preclude her ability to perform any reasonable occupation.

Orzechowski's primary physician sent another letter in disagreement and pointed out the problems with attempting to diagnose Orzechowski's medical condition based only on a paper review and suggested Aetna examine the patient in person:

> [B]asing your assessment solely on the "provided documentation" is as silly as trying to assess the quality of a meal at a restaurant by reading the menu's description without actually tasting the dish.

He also attacked Aetna's attempts to evaluate the severity of the chronic fatigue Orzechowski experienced, through objective evidence, when, by definition, there is no objective evidence of chronic fatigue.

In June 2012, Aetna upheld its decision to terminate Orzechowski's long-term disability benefits, stating that "there was insufficient medical evidence to support [Orzechowski's] continued disability for the period of July 29, 2011, and beyond based upon any physical conditions."

C.  *Orzechowski Appeals to the District Court*

Orzechowski sought district court review under ERISA, 29 U.S.C. § 1132, of Aetna's determination that she fell into the mental health exception and was not totally disabled, as

required for a continuation of benefits under Boeing's long term disability plan. Following a bench trial, the district court ruled in favor of Boeing.

The district court applied an abuse of discretion standard of review to Orzechowski's claim, rather than a de novo standard. Orzechowski argued that California Insurance Code § 10110.6 voided the discretionary clause contained in the Plan. The district court, however, held that § 10110.6 does not apply retroactively, and found that the Master Plan was last issued or renewed January 1, 2011, a year before the statute became effective. Therefore, it held that the statute did not render any provision of the Master Plan void and so abuse of discretion was the appropriate standard of review. Applying that standard, the District Court held that "Aetna's decision to terminate Ms. Orzechowski's [long-term] benefits was supported by substantial evidence in the record and was not an abuse of discretion."

This appeal followed.

## II.  STANDARD OF REVIEW

"We review de novo the district court's choice and application of the standard of review to decisions by ERISA fiduciaries . . . ." *Pannebecker v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1213, 1217 (9th Cir. 2008).

## III.  DISCUSSION

A denial of ERISA benefits challenged under 29 U.S.C. § 1132 "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary

authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If an insurance contract has a valid discretionary clause, the decisions of the insurance company are reviewed under an abuse of discretion standard. *See id.* at 111; *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 928 (9th Cir. 2012).

We previously observed that discretionary clauses have been the subject of much controversy. *See Standard Ins. Co. v. Morrision*, 584 F.3d 837, 840–41 (9th Cir. 2009) (explaining arguments for and against discretionary clauses). Opponents believe such clauses lead to inappropriate claim practices, as insurers may use them as a shield to deny valid claims. *Id.* Supporters, meanwhile, argue they keep insurance costs manageable. *Id.* Resolving the merits of discretionary clauses is thankfully not before us; individual states make that policy determination for themselves. In response to a particularly notorious example of an insurer who had used discretionary clauses to boost its profits by intentionally denying valid claims, a number of states acted via statute, regulation, or administrative action to ban or limit discretionary clauses. *See Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 867 (9th Cir. 2008).

California Insurance Code § 10110.6 is one such example of state legislation limiting discretionary clauses. Section 10110.6 provides in relevant part:

> (a) If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability

insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

(b) For purposes of this section, "renewed" means continued in force on or after the policy's anniversary date.

Cal. Ins. Code § 10110.6(a), (b).  The statute, which became effective on January 1, 2012, is "self-executing"; thus, if any discretionary provision is covered by the statute, "the courts shall treat that provision as void and unenforceable."  *Id.* § 10110.6(g).

Orzechowski argues that the district court erred when it refused to apply § 10110.6(a) to Boeing's Plan and, accordingly, applied the wrong standard of review.  Boeing has two responses.  First, it argues that ERISA preempts the California statute.  Second, following the district court, Boeing argues that even if § 10110.6(a) is not preempted, it does not apply retroactively to Boeing's Plan.  For the reasons explained below, we conclude that § 10110.6(a) is not preempted and applies to Boeing's Plan; the district court should have reviewed Orzechowski's claim de novo.

A. *California Insurance Code § 10110.6 Is Saved from ERISA Preemption*

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Nevertheless, ERISA also has a saving clause that saves from preemption "any law of any State which regulates insurance, banking, or securities." *Id.* § 1144(b)(2)(A). So, although ERISA has broad preemptive force, its "saving clause then reclaims a substantial amount of ground." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 364 (2002).

No one disputes that the California law comes within the broad terms of the preemption clause because it "relate[s] to any employee benefit plan." 29 U.S.C. § 1144(a). In order to take advantage of the saving clause in § 1144(b)(2)(A), California's statute must satisfy the two-part test set forth in *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329, 342 (2003). First, the law must be "specifically directed toward entities engaged in insurance," and second, it "must substantially affect the risk pooling arrangement between the insurer and the insured." *Id.* at 342. Section 10110.6 meets both prongs of the *Miller* test.

1. The statute is directed toward entities engaged in insurance

A law is specifically directed toward entities engaged in insurance if it is "grounded in policy concerns specific to the insurance industry." *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 372 (1999) (noting that was "key" to its decision). Boeing asks us to read "insurance industry"

literally: "Boeing, a leading aerospace company, is not engaged in the business of insurance" and its Master Plan is "not insurance." The argument is not without some logic, but we think the Supreme Court's decision in *Miller* and our decision in *Morrison* foreclose it.

In *Miller*, the Court considered preemption of Kentucky's "Any Willing Provider" (AWP) laws, which prevent health insurers from discriminating against providers within their area who are willing to meet the terms and conditions of participation. *Miller*, 538 U.S. at 332. The insurance companies argued that the Kentucky law swept too broadly because "the AWP laws equally prevent *providers* from entering into limited network contracts with *insurers*, just as they prevent insurers from creating exclusive networks in the first place." *Id.* at 334. However, the Court found that the saving clause nonetheless applied because "[r]egulations 'directed toward' certain entities will almost always disable other entities from doing, with the regulated entities, what the regulations forbid; this does not suffice to place such regulation outside the scope of ERISA's saving clause." *Id.* at 335–36. ERISA's saving clause "saves laws that regulate *insurance*, not insurers." *Id.* at 334.

In *Morrison*, we gave effect to a Montana statute that required the State Auditor to disapprove insurance contracts with a discretionary clause. The insurance company challenging the statute argued that the law was preempted because it was "not specifically directed at insurance companies," but was "instead directed at ERISA plans," and thus "ha[d] an effect on third parties." *Morrison*, 584 F.3d at 842. We rejected the attempt to distinguish between a law directed at insurance companies and a law directed at ERISA

plans and procedures. *Id.* We explained that ERISA plans "are a form of insurance," even when issued by a corporation whose principal business is not insurance. *Id.* Citing *Miller*, we held: "That an insurance rule has an effect on third parties does not disqualify it from being a regulation of insurance." *Id.*

Our decision is consistent with holdings of other circuits. The Seventh Circuit recently addressed an Illinois statute similar to § 10110.6 in *Fontaine v. Metropolitan Life Insurance Co.*, 800 F.3d 883 (7th Cir. 2015). MetLife, the ERISA plan administrator for a law firm, denied long-term benefits to one of the firm's partners. As in this case, "[b]oth sides presented extensive medical evidence" and "[t]he standard of review [was] the pivotal issue." *Id.* at 885–86. MetLife argued that the Illinois statute was "not specifically directed toward entities engaged in insurance because it prohibits a plan sponsor . . . from delegating discretionary authority to the insurer of an employee benefit plan." *Id.* at 887. Applying *Miller* and citing our decision in *Morrison* with approval, the court held:

> While [the law firm] is not an insurer and is nevertheless affected by [the discretionary clause prohibition], that does not mean that [the law] is not specifically directed toward entities engaged in insurance. The Supreme Court rejected essentially the same too-clever argument in *Miller* . . . . Prohibitions on discretionary clauses, like any-willing-provider laws, have similarly inevitable effects on "entities outside the insurance industry." Just as in *Miller*, that does not

> change their character as insurance
> regulations.

*Id.* (internal citation omitted). The court also rejected the argument that because "the discretionary clause in this case is not actually in an insurance policy but in an ERISA plan document," the statute was not a law specifically directed towards entities engaged in insurance. The Seventh Circuit termed it a "hyper-technical argument":

> Whether a provision for discretionary interpretation is placed in an insurance policy or in a different document is arbitrary and should make no legal difference. If MetLife's interpretation of ERISA's saving clause were correct, then states "would be powerless to alter the terms of the insurance relationship in ERISA plans; insurers could displace any state regulation simply by inserting a contrary term in plan documents. This interpretation would virtually 'read the saving clause out of ERISA.'"

*Id.* at 888 (quoting *Ward*, 526 U.S. at 376); *see also Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 602 (6th Cir. 2009) (holding that Michigan's regulation banning discretionary clauses was saved from preemption).

We too conclude that § 10110.6(a) regulates "entities engaged in insurance," *Miller*, 538 U.S. at 342, even if they are not insurance companies. Section 10110.6 is directed at "*insurance*, not insurers," *id.* at 334, because it covers "a policy, contract, certificate, or agreement . . . that provides or

funds life insurance or disability insurance coverage," Cal.
Ins. Code § 10110.6(a).

2.  The statute substantially affects the risk-pooling
    arrangement

California's law substantially affects the risk-pooling
arrangement between the insurer and the insured, satisfying
the second part of *Miller*. This requirement is aimed at
ensuring that the laws in question are "targeted at insurance
practices, not merely at insurance companies." *Morrison*,
584 F.3d at 844.

As we recognized in *Morrison*, bans on discretionary
clauses, such as § 10110.6, clearly alter "the scope of
permissible bargains between insurers and insureds." *Id.*
(quoting *Miller*, 538 U.S. at 338–39). In *Morrison*, we held
that a regulation disapproving of discretionary clauses
"substantially affect[ed] the risk pooling arrangement" by
narrowing "[t]he scope of permissible bargains between
insurers and insureds." *Id.* at 844–45. Here, as in *Morrison*,
the "disapproval of discretionary clauses 'dictates to the
insurance company the conditions under which it must pay
for the risk it has assumed.'" *Id.* at 845 (citation omitted).
"By removing the benefit of a deferential standard of review
from insurers, it is likely that the [California law] will lead to
a greater number of claims being paid. More losses will thus
be covered, increasing the benefit of risk pooling for
consumers." *Id.*; *see also Fontaine*, 800 F.3d at 889
(concluding that "a state law prohibiting discretionary clauses
squarely satisfies this requirement"); *Am. Council*, 558 F.3d
at 607 (same).

Section 10110.6(a) satisfies both of the *Miller* prongs. Having determined that it is saved from ERISA preemption, we must resolve whether the statute applies to Orzechowski's claim against Boeing.

B. *Section 10110.6 Applies*

As we have quoted above, § 10110.6 voids any "provision that reserves discretionary authority to the insurer, or an agent of the insurer." Cal. Ins. Code § 10110.6(a). The statute applies to any "policy, contract, certificate, or agreement offered, issued, delivered, or renewed." *Id.* "'[R]enewed' means continued in force on or after the policy's anniversary date." *Id.* § 10110.6(b). Thus, for § 10110.6 to void the discretionary clauses in question, "a policy, contract, certificate, or agreement" must have been "offered, issued, delivered, or renewed" after the statute's effective date of January 1, 2012. *See Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 927 (9th Cir. 2012) ("The law in effect at the time of renewal of a policy governs the policy . . . .").

Boeing argues, and the district court agreed, that § 10110.6 did not apply to Orzechowski's claim because its Master Plan was dated January 1, 2011.[3] There is no dispute that Boeing's *Policy*—which is different from its *Plan*—had an anniversary date of January 1, 2012, and renewed accordingly. We think this is sufficient to invoke the statute. The statute makes clear that it applies when the "policy"

---

[3] Boeing states that the Plan was amended effective January 1, 2013, but that 2013 Plan amendment did not apply to Orzechowski's claim because it was first denied in 2012.

renews.    When the definition of "renewed" found in
§ 10110.6(b) is inserted into section (a), the statute reads:

> If a policy, contract, certificate, or agreement
> offered, issued, delivered, or [continued in
> force on or after the policy's anniversary
> date], . . . contains a provision that reserves
> discretionary authority to the insurer . . . that
> provision is void and unenforceable.

Cal. Ins. Code § 10110.6(a).  A document (not just a policy,
but also the contract, certificate, or agreement) is "renewed"
if it "continue[s] in force on or after the policy's anniversary
date." *Id.* § 10110.6(b).  Boeing's Policy here "renewed"
when it continued in force beyond its anniversary date of
January 1, 2012 and, accordingly, the Master Plan similarly
"renewed" when it continued in force beyond the *Policy's*
anniversary date.

Boeing argues that § 10110.6(b) must refer only to
insurance policies and not other plan documents.  Thus,
claims Boeing, the discretionary clause in the Master Plan
survives and applies to Orzechowski's claim.  This is a
variation on the prior argument that ERISA's saving clause
applies only to insurance companies, and not to insurance
provided or funded by other companies.  The argument fares
no better the second time.  By its terms, § 10110.6 covers not
only "policies" that provide or fund disability insurance
coverage but also "contracts, certificates, or agreements" that
"fund" disability insurance coverage.  "An ERISA plan is a
contract," *Harlick v. Blue Shield of Ca.*, 686 F.3d 699, 708
(9th Cir. 2012), and thus the Master Plan falls under
§ 10110.6.

## IV.  CONCLUSION

Because California Insurance Code § 10110.6 applies to Boeing's Master Plan and Summary Plan Description, the district court should have voided the discretionary clauses and reviewed Orzechowski's claim de novo.  On de novo review, the district court should give appropriate consideration to Orzechowski's fibromyalgia and chronic fatigue syndrome diagnoses, which were ignored by Aetna in its denial of benefits based on file reviews.  Aetna demanded that Orzechowski produce objective evidence showing that her disability was caused by a non-psychological condition.  But as we have previously acknowledged, fibromyalgia and chronic fatigue syndrome are not established through objective tests or evidence. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 678 (9th Cir. 2011) (citing *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 877 (9th Cir. 2004), *overruled on other grounds*, *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc)). We remand to the district court for review in accordance with this opinion.

**REVERSED AND REMANDED.**